The first case this morning is Fleisher v. Standard. Appellant. Good morning. Please speak louder. Ms. Thompson, you too. Louder and clearer. Okay. Good morning, Your Honor. My name is Clifford Swift. I represent the appellant in this matter, Robert Fleisher. And at this time, I'd like to reserve four minutes for rebuttal. Okay, you have to be heard all the way to Connecticut. I want you to know that's where Judge Garth is. And let me tell you, if you're not heard, he'll let you know. Okay. Thank you, Judge. Go ahead, sir. This case concerns two insurance policies. The first insurance policy was issued to Dr. Fleisher in 1979. It's an individual disability policy issued by a North American company for life and health insurance. It pays a $1,500 benefit. Dr. Fleisher received- $1,500 a month? $1,500 a month, yes, for accident or injury. Or accident or illness, I'm sorry. Dr. Fleisher received this policy or purchased this policy through the American Association of Endodontics. He's an endodontist. He's been practicing since prior to 1979. In 2002, I believe it was, he received a policy, a group insurance policy from the standard. And that was through his employer, which was Endodontics Limited. That policy paid $10,000 per month for disability, for illness or injury. He applied for benefits for both, and he was approved for benefits for both. However, the standard insurance policy, the policy that pays the $10,000, under their provisions for deductible income, they reduced his monthly benefit by $1,500, the amount that he received from the North American policy. The operative provision is, under deductible income, is reducing for another group policy. The standard has interpreted their policy and the North American policy as being another group policy. Therefore, they have deducted $1,500 from his total disability benefit. It is our contention that this is an error. If you- The precise language is group insurance coverage. Another group policy. Another group policy. Yeah. Our contention is this is an error. That the policy that Dr. Fleisher had purchased from North American is, in fact, an individual disability policy. It shares all the characteristics of an individual policy and not a group insurance policy. For example, it is individually under- Was he issued a policy itself, and was he issued an individual policy, or did he just receive a certificate of insurance? Well, and that is a bone of contention, because what he has is a certificate, and- It's a bone of contention, or it's- Well, we have not seen- Did somebody decide? Well, we haven't received a copy of the group, I'm sorry, of the North American policy. Did you ask? We have asked for the policy. We haven't gotten a discovery with the standard. They received a copy of the policy and the underwriting file from North American. But we have not seen it yet. We haven't engaged in any discovery. Well, how did you get here without having engaged in at least some minimal discovery? At the time that we had requested the claims file from the standard, they did not have a copy of the policy, of the group policy in there. They had received it in 2009. Okay, but it's now 2012. Right. So what happened between 2009 and now? Well, we had engaged in litigation, and we were in the district court, and we did not get the discovery phase to- I don't understand how that can be. How can you come to a court of appeals without knowing what the facts are? Well, we do know what the facts are with regards to the policy that he received. And he received the policy, which is included in the materials. But the issue is what his other policy is. And my question was, did he actually receive what I would consider to be a policy or simply a certificate? And you did receive a letter from North American to describe what the coverage was, but you could have obtained the policy if there's a policy that's issued to individuals. Right? Well, what he has appears to be a policy. It does say certificate on it, but it has all the hallmarks of a policy, individual policy. It contains all the provisions, and it does appear to be self-contained. It talks about being non-cancellable, guaranteed renewable. It talks about the benefit provisions, surrendering, what happens if there's military service. It does have every provision in there that a policy would have. So that is our intent. But it's issued through the American Association of Endodontics. Correct. And that was – and that's just a – it is just a function of a mass marketing where the American Association of Endodontics allowed or permitted North American to solicit its members for this policy. Typically, when this occurs, there's a discount on the policy, you know, for the premiums that are paid. However, that – other than that, there is nothing that shows that this is a group policy. It's not – Wasn't it – wasn't it characterized, Mr. Swift, as a group policy? On the front of the certificate, it does say, having issued group policy, and then it gives a policy number. But that's the only place – And – go ahead. That's the only place anywhere in the certificate that refers to it as a group policy. And your contention is that it was an individual policy, not a group policy. Is that correct? Yes. Yes, sir. And the district court called it a franchise policy. Is that so? That is correct. Where does that come from? Where does franchise enter into the field? Well, there was a – there was a – the court – the district court looked at Applebaum on insurance, and they determined that a franchise insurance is a type of group insurance. However, the court went through an analysis of the different provisions, and one of the provisions of that was that it be – there's no underwriting, which is distinct from the policy at issue here in that it was individually underwritten. Attached to the policy is the application, which shows that it was – there was a health questionnaire, that there was a retail credit check that was done. So this was individually an underwritten policy. Mr. Swift, let me just ask you one or two procedural questions before we get back into the substance of this, if you will. Yes. This was an amended complaint, and it was never approved by the district court, was it? Yes, Your Honor, you're absolutely correct. Well, how come that we are here on an amended complaint where the rule requires approval by the district court and there was none? Well, Your Honor, the court, instead of dismissing the amended complaint based upon the fact that there was a procedural irregularity, did so on the merits of the case. Now, one other thing, you led me right into it. This was a dismissal, wasn't it? It wasn't a judgment for standard. Yes, it was not a summary judgment. It was a motion to dismiss. It was a 12B6 – it was not a summary judgment, was it? Correct, it was a 12B6. It was a 12B6 dismissal. Why should this be a dismissal based on the amended complaint if you give every allegation a favorable view as we are required to under our standard? Well, that is a very good question, Your Honor. It's our contention that it should not have been a dismissal, that there should have been some discovery that was done in order to obtain information that the standard relied upon in rendering its decision. Also, we were not able to engage in a 30B6 witness in order to determine if there was any bias involved here within the structural conflict that the standard has. Do you represent the plaintiff? I'm sorry? Do you represent the plaintiff? Who is the plaintiff? The plaintiff in this case is Robert Fleischer. Yes, Dr. Robert Fleischer. So that's you? Yes. Well, don't you have the laboring oar to make sure that all of the facts are before the court? Yes, Your Honor, but you have to understand that this was the initial pleading stage, that we attached what facts we thought were relevant. But you appealed, right? Yes. And you didn't do anything to find out the facts, the underlying facts? I mean, it seems to me it's your responsibility, and if we don't have them, then the court gives it to the case to you. Well, Your Honor, with regards to the group policy, we had attempted to get that from North American. However, since they were paying a disability benefit, it's their contention they did not have to provide us with any information. And that's typical of insurance companies in a non-ERISA case. But at least when I practiced law, admittedly it's a long time ago, was that yours, your lab? It was not me. Judge Garza. No, it was Judge Garza. I was the one that was laughing at that. You had the responsibility of getting the facts. Don't tell us some of the third party didn't give it to you. I mean, you have to bring a case. You're the appellant. You have to bring a case before us with all the information there. Yes, Your Honor. However, since this was dismissed on a motion dismissed, we did not engage in any discovery. There were no subpoenas that were authorized or issued. But you could have tried. Not at that stage. As soon as the Second Amendment complaint was filed, a motion to dismiss was filed, and the judgment was issued. And you could have filed, it seems to me, you could have filed and said, please don't dismiss, because we still have an issue of fact. Isn't that your responsibility? Yes, Your Honor. It would absolutely be the plaintiff's responsibility. And you haven't done it. Again, with all due respect, I didn't believe that at that stage that we were permitted to do anything. The issue before the district court was whether the decision made in the case that this constituted group insurance was arbitrary and capricious, right? Correct. And I see that my time is up. Did you, one moment, Mr. Swift, if you will, and the court will permit me. I had a question to ask. Did you raise at any time before the district court in the hearing that you had, did you raise the issue of inherent conflict between the policy of standard and the fact that they were the one that were administering the benefits? Your Honor, there was no hearing in the court below. This was a motion to dismiss. We did raise that in the pleadings that there's a inherent conflict. You did argue it. No. Did you not argue it? No, we did not. You did not. All right. But we did raise the issue that there is an inherent structural conflict, that the standard is the person who makes the determination as to whether benefits are paid and also the entity that pays the benefits out of its own funds. I'm sorry, I didn't hear what you just said. You mumbled it. Oh, I'm sorry. What I said was that we did raise the issue that the standard, that there is a structural conflict, inherent structural conflict, in that the standard is the party that determines whether benefits are paid and that they pay those benefits out of their own funds. And do you regard that as a conflict? Oh, yes, I do. It is a structural conflict. It's one of those factors that was discussed in the plight. And did you raise before the district court the motion to dismiss, did you raise the issue that standard was the drafter of this policy, that it should be construed as a contract, and that's against the drafter of the policy? Yes, Your Honor. However, that argument was dismissed as well. Because it's decided, this case is decided under ERISA, correct? Correct. Thank you. Thank you. Mr. McGratton? Good morning, Your Honors. I'm Brooks McGratton from Pierce Atwood for the Appellee Standard Insurance. And I'd like to begin that, with due respect, I think my colleague has misstated certain facts that you should be aware of. Dr. Fleischer, both in the case below and in this appeal, has stated on several occasions that he has an individual insurance policy with this other insurance company called the North American Company for Life and Health Insurance. And indeed, the document that he contends is this individual insurance policy was appended to the amended complaints. And if you study that document. So, excuse me, let me just understand that. So this so-called policy, that the question is whether it's a group policy or an individual policy, was appended to the complaint? Correct. So, I don't understand why we were told that they didn't provide it. Let me explain. I can get to that. If the court examines this document that was appended to the complaint, it will determine very easily that it itself is not an insurance policy. As Judge Von Aske picked up on, it is a certificate of insurance. And indeed, in the first few sentences of that document, it says that the member, Dr. Fleischer, is entitled to participate in the group policy that was issued to the American Association of Endodontists. Would you point me, you're talking about the North American policy. That's correct, Judge Garth. Would you point me to the place? I have it before me. Where are you reading from? From the very top of the first page. It's a certificate number? That's correct, Your Honor. And the joint appendix I received is a difficult document to read. But it refers to the group or master policy that is in place. And then there are various provisions that follow that refer to Dr. Fleischer's right to participate in this group policy. And let me say so what? Because I think that is the fundamental characterization of a fundamental character of group coverage. There is no individual insurance contract running from North American to Dr. Fleischer. Dr. Fleischer has a certificate that allows him to participate in this group policy that was written to the entire association for its members. And I think the district court below correctly determined that this is essentially what's called a franchise policy, which is a variant or a subset of the term commonly used as group coverage. So let me ask you one thing, if I may, Mr. McGrattan. If that policy provided a benefit of $10,000, the same as standard does, do I understand that the doctor would have paid $10,000 a premium on $10,000 for the years that he had that policy, no matter what you call it, which was about four years before the standard policy was written, and that despite having paid those premiums, you would have deducted $10,000 from your benefit, and you would continue to pay the premium for the North American policy without receiving any benefits at all? Not exactly, Your Honor, because the way the standard policy is written, there are offsets or reductions to coverage, but there is a minimum benefit available under the standard policy. What is the minimum benefit? That I do not recall at the moment. I know the maximum was $10,000, which is the gross benefit that Dr. Fleischer was entitled to. It was reduced by $1,500 a month to reflect his benefit under this other coverage, and that's why I understand that. But if the other coverage was $10,000, do I understand that there was still a minimum under standard, such as $100 or $1,000, that he would get despite that? I believe that is correct, Your Honor. We don't know what that minimum amount is. It is in the policy, in the group policy, which is in the joint appendix. It's in the appendix, and it's in the policy, but it's not going to be articulated as part of it. Is that right? If the court wishes, I can look at it quickly and respond, perhaps right after Mr. Swift's reply. The I would like to know that if Judge Schlupeter will give you permission to do that. Anything you would like to know, I give you permission to find out. Thank you, Your Honor. After the reply, I will look at the policy and respond to Judge Garth's question. Does this policy have an end date? In other words, how long do these policies continue? I mean, he's on long-term disability, right? Yes. I believe the earlier, some of the older policies typically pay benefits until age 65. The more modern ones pay benefits until Social Security retirement date, which I believe is now about 67. And which one is this? This is, I believe, the benefits on this are potentially payable up to age 67. But again, I will determine that. Yeah, but you came here. I don't understand both of you. I mean, you came here to argue a case. I would think you would have looked those facts up before you came to us. Fair enough, Your Honor. There's one additional misstatement that I think was made that I'd like to clarify. I think Mr. Swift suggested that the group policy issued by North American Company for Life and Health Insurance is in the possession of Standard Insurance and was not turned over. It is not in the possession of Standard Insurance. I do not have that. Well, who has it? I would assume the North American Company for Life and Health Insurance would have it, or Reassure America, which apparently is the entity that is now administering that policy for Dr. Fleischer. Isn't this the policy, the thing that says Certificate and Summary Plan Description? It's the SPD, which usually we look to. Yes, I think that you're referring to the Standard Insurance policy. I'm talking about the other coverage. And what the court has, and all we have at this point, is a certificate of insurance that refers to another group policy that is not even before the court. Don't you think we ought to have all these things before we are called on to resolve this issue? I thought that was precisely the question I also asked. Well, no, because I think the precise question that was put to the district court was this. The complaint said, here is my certificate. It is an individual policy. So standard erred in subtracting my benefits. And on that complaint, as far as that complaint went, we believe the district court correctly said no. What you have there is a certificate of insurance, which is evidence of your participation in other group insurance. So based on what you say in this complaint, we do not see this matter surviving as a matter of law. I'm looking at page 61 of the joint appendix. And could the minimum benefit be as little as $100? It could be. Because that's what it says, minimum LTD benefit, $100. Yes. And commonly where that arises is when someone is getting Social Security, that would reduce the benefit as well. So that if that's the case, that means then if he had taken out a $10,000 policy with North American, and he would have paid premiums on that and would continue to pay it without getting anything in the way of benefits except for $100 because the $10,000 would have been subtracted from the standard $10,000. Am I correct? That is correct. But I would suggest that is not an inequitable result, as the courts have pointed out in, I believe it was the Gutta case. Because, please understand, Dr. Fleischer himself did not enter into an individual policy with standard. As part of his employment, he was given as a benefit of his employment coverage under the standard group policy. And the standard policy is quite clear. If you are receiving other benefits from other group coverage, your benefits under this coverage will be reduced. Who paid for this? But there's no definition. I'm sorry. Go ahead, please. Who paid for this policy? The standard policy was the employer, not Dr. Fleischer. And didn't deduct anything from Dr. Fleischer? I have not seen Dr. Fleischer's individual tax information, so I don't know to what extent he participated. Yeah, but you must have asked that he pay for it. And the ERISA plan would indicate who's paying for it, right? Well, what we have for the plan is the group policy. And I don't honestly know. I don't believe that policy indicates whether it is contributory by the employees or whether it's entirely employer funded. And the other problem is that these various terms that we have been throwing around this morning should be defined in some intelligible way so that an individual would know what the risks and benefits were of the actions that he was taking. Your Honor, as the District Corporal Lowe found, the terms that he was using. No, no, no, no, no. I'm asking you whether you don't think that these should be defined in the policy so that an individual knows what he's getting. And my response to that is I think the term group policy is sufficiently clear to encompass not only what we would consider a true group policy, but the other subset, which is a franchise policy. I want to get back to the language I'm looking at. My understanding is that the amount paid by standard is reduced by any amount you receive or are eligible to receive because of your disability under another group insurance coverage. Correct. That's the term, group insurance coverage or other group insurance coverage. Correct. And that term's nowhere defined. It is not defined in the contract. But the standard here is whether or not the decision was arbitrary and capricious. That is correct. And I would go beyond that to say that there are in the policy exemptions from deductible income. And the exemptions say if you are getting benefits from another individual insurance policy, we will not reduce. And I think that the judge in the district court below properly considered the deduction for other group insurance coverage as well as the exception to that for benefits received under other individual coverage. He concluded that the certificate of insurance is, at best, evidence of participation in some group coverage, and the standard's decision was correct. Let me emphasize that there is a deferential standard of review at play here. Dr. Fleischer challenged that in the district court. The district court rejected that challenge and that is not contested in this appeal. And to get to your question earlier, Judge Garth, the district court on its own raised this question about whether there is any bearing on the fact of the conflict that standard pays benefits as well as adjudicates the claims. And the district court noted that the question here is not so close that conflict of interest would affect the result of the court's determination. Please bear in mind, under Glenn, the US Supreme Court's decision in Glenn and also in Conkright, even if there is a conflict of interest, that does not alter the standard of review, which is deferential.  under the deferential standard of review, the fundamental question is, is standards determination here reasonable? And the district court determined, because this policy is a franchise policy, which numerous legal commentators refer to sometimes interchangeably with group coverage, that the determination by standard was not unreasonable. It was reasonable, and that's why the complaint below was properly dismissed. You had no objection to the amended complaint being argued, although it had not been approved by the district court? As part of standard's motion to dismiss the second amended complaint, standard pointed out that that complaint had not been properly filed. To repeat, plaintiff filed the complaint, standard moved to dismiss. In other words, there was no answer to the complaint. Correct. Standard moved to dismiss the complaint. Plaintiff did not respond to that motion to dismiss. The plaintiff filed the second, excuse me, first amended complaint. We again moved to dismiss. Plaintiff filed the second amended. We again moved to dismiss, and the case was determined on that motion to dismiss the second amended complaint. And the judge below did note that the second amendment complaint was improperly filed, but proceeded nevertheless to determine the matter on its merits. Sort of like if there had been a motion for leave to file that second amended complaint, the district court could have dismissed it or denied the motion on futility grounds. That is correct. Thank you, Your Honors. Thank you. How many minutes? Four. Thank you, Ms. Offa. Your Honor, just to clarify a couple of questions that came up, with regards to whether or not- Before you do that, Mr. Swift, before you do that, just ask me, what relief are you seeking from us? Well, Your Honor, the relief that I am seeking, which we put in our appeal, is a remand back to the district court to allow us to engage in discovery and to fully explore the issue of whether or not that this is a individual or a group policy subject to offsets. Any alternative, I would ask that the court determine today that this is an individual policy. This is what? That the North American policy is an individual policy. Is an individual policy. But that's not the issue before us. The issue before us is whether or not the administrator, or in this case, Standard, abused its discretion or was arbitrary and capricious. Correct. Correct, Your Honor. And it comes down to whether or not their interpretation was reasonable, that whether or not- So if it's ambiguous, and there are two plausible interpretations, and one of which is it's a group coverage, or group insurance coverage, then we must affirm. I'm sorry, could you say that again? Yeah. If the term is ambiguous, the term another group insurance coverage is ambiguous, and Standard's interpretation is one of two plausible interpretations, reasonably plausible interpretations, we must affirm. Correct, Your Honor. I agree with that standard. However, I disagree that their interpretation was a reasonable one. All right. Just to get back to the Standard policy, you would ask the question as to whether or not this was a contributory policy or a non-contributory policy, the Standard policy, whether- I asked that. I'm sorry, Judge Loader. It doesn't matter. Dr. Fleischer did not pay premiums to the Standard policy. It's a non-contributory policy. And again, Judge Garth, as you said, there is a minimum benefit of $100 for that policy. One thing that you did say, Judge Garth, was that the North American policy had predated the Standard policy by four years. In fact, Dr. Fleischer paid premiums for 23 years before he got the Standard policy. So he paid premiums from 1979 until 2002, and up until actually 2004 when he became disabled on that North American policy. And he does not get the benefit of that bargain because the $1,500 is being deducted from his benefit every month by the Standard. Now, with regards to the information that the Standard has in its possession, I refer you to a letter from Reassure America, who is a third-party administrator in this case. They say that they provided the policy to the Standard. They also said that they had discussions. And again, they say that this is an individual policy, and they would be the people that would know. They're the ones who are involved with issuing the policies, they're involved with underwriting the policies, and they administer the policy. And they state in their letter that this is an individual policy, and that they are treating all aspects of the policy as an individual policy. Unfortunately, the judge sort of ignored that or gave it short shrift in the district court. But I think that is very important information, that the person that issued, or the entity that issued the policy, it considers it an individual policy. And again, individual policy in the Standard policy is not a defined term. It's another term that's not defined. Let me ask you this question. What discovery would you need to undertake in this case, if it went back? Well, we would want to get another copy of the claims file, number one, from the Standard to see what information they've got from Reassure America. Number two, we'd want to issue subpoenas to Reassure America or North American Company and get copies of the underwriting file and the so-called group policy that they say that they have, or I'm sorry, that the standards say they have. Could you not have gotten that before this? I mean, did they have, was it necessary for the district court to have allowed you to do that? Couldn't you just ask for the discovery? Yes, Your Honor. As I had indicated previously. Yeah, and I don't understand why you didn't do that. Why you, I feel the same as Judge Gorth, why you come before us without having done any of the prep work? Your Honor, we did ask Reassure America for information. However, since they were paying the claim, they refused to give us any information from their files. Then did you file discovery? Not at, we did not file discovery. Why not? Because at that point, we did not have time to do that. We were in the- Wait a minute, we're talking years. What do you mean you didn't have time? How much time does it take lawyers to do things? We were in the initial pleading stages. As was indicated previously, we had filed a complaint and a motion to dismiss was immediately filed. We didn't even get into setting up discovery. You mean you didn't, somebody didn't bother to open the file. You didn't look into it, you didn't try to make the discovery necessary. I disagree with that, Your Honor. Well, we see the result. Was there a Rule 16 conference in the case? I don't believe there was in this case. All right. Thank you, Your Honor. We'll hear counsel in the next case, United States v. Sherry. Thank you. Good morning. Just give me a minute, Molly. Okay. Sorry, Your Honor. That's okay. Good morning. May it please the court. My name is Robert Epstein. I'm here today on behalf of the appellant, Mr. Antoine Chart. With the court's permission, I'd like to reserve five minutes of my time for rebuttal. Granted. Thank you, Your Honor. The first issue on this appeal is whether the government satisfied its burden below of establishing that the Miranda violation which occurred in this case was not deliberate. We submit that the government didn't satisfy their burden and that as such, the district court should have suppressed Mr. Chart's written confession. Now, when you look at the record in this case, there's no dispute as to the facts. And we would submit not only did the government not satisfy their burden below, but that when you look at Detective Zantich's testimony, it is clear that the violation in this case was deliberate. And I would point to six different aspects of the detective's testimony.